Lee WARD, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 84–443.

District of Columbia Court of Appeals.

Argued Feb. 21, 1985.

Decided June 26, 1985.

Daniel J. Slattery, Jr., Grand Rapids, Mich., for appellant.

Karen J. Krueger, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK and NEWMAN, Associate Judges.

PRYOR, Chief Judge:

In this civil forfeiture action, the Superior Court ordered $20,477.19 seized from appellant Lee Ward forfeited to the District of Columbia, *see* D.C.Code § 22–1505(c) (1981), after finding that the money was "used, or to be used, in violation of local gambling laws." *See id.* § 22–1501. On appeal, Ward's sole claim is that the action for forfeiture of his property is time-barred because not commenced within the one-year limitations period "for a statutory penalty or forfeiture" in *id.* § 12–301(5). We agree with appellant that the one-year limitations period "for a statutory penalty or forfeiture" in § 12–301(5) is applicable to libel actions for forfeiture brought under § 22–1505(c). However, because we decide that the statute of limitations is tolled during the pendency of the criminal proceeding related to seizure of the property, we affirm.

I

On September 20, 1980, police officers seized $20,477.19 belonging to Mr. Lee Ward. Of this total, $1,441 was seized from Mr. Ward's person, $1,204.38 from his automobile, and $17,831.81 from his residence. On October 20, 1980, Mr. Ward was indicted on the charge of operating a lottery in violation of § 22–1501. After a motion to suppress the evidence was denied on February 5, 1981, Mr. Ward pled guilty

to the criminal charges on April 20, 1981, and was placed on probation for six months.

On May 11, 1981, the United States Attorney's office advised the property clerk of the Metropolitan Police Department that the money seized on September 20, 1980, was no longer needed as evidence in the criminal case against Mr. Ward. Six months later, on November 12, 1981, the District of Columbia filed this action seeking forfeiture of the seized money. Mr. Ward's answer, filed on December 3, 1981, alleged that the money was illegally seized, was not used in connection with gambling, and that the action was time barred under the one-year statute of limitations in D.C. Code § 12–301(5) (1973).

On December 3, 1981, Mr. Ward also filed a motion for summary judgment, asking that the action be dismissed on the ground that it was not timely brought. The District of Columbia opposed the motion, asserting that the one-year statute of limitations did not apply, and alternatively, that even if the one-year period did apply, it did not begin to run until after the criminal proceedings were concluded. The Superior Court heard and denied Mr. Ward's motion on March 30, 1981. The court found that it need not reach the question of whether the one-year statute of limitations applied, because it ruled that the limitations period did not begin to run until after the criminal proceedings were concluded.

After an attempted interlocutory appeal of the trial court's denial of summary judgment was dismissed by this court on August 25, 1982, the case was tried on March 16, 1983. The court found that the money seized on September 20, 1980, was "used, or to be used, in violation of the local gambling laws," and ordered the money forfeited to the District of Columbia. This appeal followed.

## II

The statutory background of this case is straightforward. D.C.Code § 22–1505(c) (1981) provides, in pertinent part:

All moneys ... used or to be used: (1) In carrying on or conducting any lottery ... contrary to the provisions of § 22–1501 ... shall be subject to seizure ... and shall, unless good cause be shown to the contrary, be forfeited to the District of Columbia....

D.C.Code § 12–301 (1981) outlines the limitations period for bringing certain actions. This section provides, in part:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

\*    \*    \*    \*    \*    \*

(5) for a statutory penalty or forfeiture—1 year....

Since the District of Columbia commenced the libel action for forfeiture of appellant's property on November 12, 1981—over thirteen months after the property was seized—appellant argues that this delay renders the forfeiture action time-barred under § 12–301(5). Thus, the initial question presented for our review is whether the one-year limitations period "for a statutory penalty or forfeiture" in § 12–301(5) applies to libel actions for forfeiture brought by the District of Columbia under § 22–1505(c).

Appellee argues vigorously that the one-year limitations period is not applicable to libel actions for forfeiture under § 22–1505(c). This argument is in two parts. First, appellee asserts generally that "municipalities are exempt from the operation of statutes of limitations when acting in their delegated governmental capacity to enforce public rights, unless the legislature has expressly or by clear implication provided to the contrary." Second, appellee argues that this general rule is controlling in this case because the limitations period in § 12–301(5) is not applicable, "either expressly or by necessary implication," to libel actions for forfeiture under § 22–1505(c). The District of Columbia claims

that under the present statutory scheme, therefore, no statute of limitations applies to the libel action in this case. We address the two contentions in appellee's analysis separately.

### A.

"It is firmly established that a sovereign, whether state or national, is exempt from the operation of statutes of limitations where it seeks to assert a public right, unless the sovereign expressly provides that its claim shall be barred if not pursued within a stated period of time." *Stonewall Construction Co. v. McLaughlin,* 151 A.2d 535, 536 (D.C.1959); *see also Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938); *State v. Owen,* 23 N.J.Misc. 123, 127, 41 A.2d 809, 812 (1945). Appellee asserts that this rule is applicable to municipalities when acting in a delegated governmental capacity. Consequently, appellee argues, the rule applies to the District of Columbia when it is acting, as here, to enforce a public right.

Despite appellee's assertion, it is less than clear that the District of Columbia falls within the scope of this concept. In *Metropolitan Railroad Co. v. District of Columbia,* 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889), the Supreme Court considered whether a statute of limitations would operate against the District of Columbia to bar a contract action against a railroad company. Holding that the statute of limitations was applicable to the District of

Columbia, the Court in *Metropolitan* stated, "We are clearly of the opinion that the [District of Columbia] is a municipal corporation, having a right to sue and be sued, and subject to the ordinary rules that govern the law of procedure between private persons." *Id.* at 9, 10 S.Ct. at 22. This holding, never subsequently altered by the Supreme Court, and binding on this court, strongly suggests that limitations periods are applicable to the District of Columbia.[1]

We are mindful, of course, of the significant changes in the status of the District of Columbia brought about by the passage by Congress in 1973 of the Self-Government Act (the Act) D.C.Code §§ 1–201 *et seq.* (1981). In the Act, Congress delegated certain specific legislative powers to the District of Columbia government, subject to the retention by Congress of ultimate legislative authority. *See id.* § 1–201(a). These legislative powers "extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of [the] Act...." *Id.* § 1–204. Despite changes wrought by the Act, however, D.C.Code § 1–102(a) (1981) provides that "[t]he District ... is constituted a body corporate for municipal purposes, and may ... sue and be sued, ... and exercise all other powers of a municipal corporation...." Thus, it is not likely that the holding in *Metropolitan* is affected by changes in the status of the District of Columbia effectuated by passage of the Act. We do not resolve this question here, however, because we find

---

1. We do not find the cases cited by appellee in support of its position persuasive. In *Stonewall Construction Co. v. McLaughlin, supra,* the general statute of limitations of three years was held inapplicable to the District of Columbia in its attempts to recover money owed to the District Unemployment Compensation Board. This court in *Stonewall* made clear, however, that the sovereignty of Congress—not that of the District of Columbia—blocked application of the statute. 151 A.2d at 536. In *Cullen v. District of Columbia,* 221 A.2d 914 (D.C.1966), the general three-year statute of limitations was held inapplicable to an action by the District of Columbia to recover money from the estate of a person who had received care from the District for

mental illness. The outcome in *Cullen,* however, resulted from a specific congressional enactment which was held in *Baker v. District of Columbia,* 39 App.D.C. 42, 53–54 (1912) to render the statute of limitations inapplicable to such actions. *Id.* While *District of Columbia v. Weiss,* 263 A.2d 638 (D.C.1970), does appear to support appellee's position, in light of *Metropolitan, supra, Peak v. United States,* 419 A.2d 1006, 1008 (D.C.1980) (stating, in dicta, that the one-year statute of limitations in § 12–301(5) applies to forfeiture actions under § 22–1505(c)), and the absence of additional authority supporting the position, we do not find this decision dispositive.

that even if the general rule cited by appellee applies to the District of Columbia, the one-year limitations period in § 12–301(5) is applicable, by necessary implication, to libel actions for forfeiture.

## B.

■ The second part of appellee's argument is that the one-year limitations period "for a statutory penalty or forfeiture" of § 12–301(5) does not apply, either expressly or by necessary implication, to libel actions for forfeiture brought by the District of Columbia under § 22–1505(c). We disagree. Assuming, without deciding, that the limitations period of § 12–301(5) does not apply expressly to libel actions under § 22–1505(c), we find the one-year limitations period applicable by necessary implication.

■ It is axiomatic that the language of a statute should be "interpreted in accordance with its ordinary and usual sense, and 'with the meaning commonly attributed to it'" *United States v. Thompson,* 347 A.2d 581, 583 (D.C.1975) (citations omitted). It is certainly consistent with the "ordinary and usual sense" of the language "statutory penalty or *forfeiture*" in § 12–301(5) (emphasis added) to conclude that it encompasses libel actions for forfeiture brought under § 22–1505(c). Indeed, it was in all likelihood the ordinary and usual sense of this language that prompted this court in *Peak v. United States, supra,* 419 A.2d at 1008, to declare, in dicta, that the one-year limitations period in § 12–301(5) applies to actions under § 22–1505(c). While we are not bound by this dicta in *Peak,* it reinforces our conclusion that the language of § 12–301(5) includes libel actions for forfeiture under § 22–1505(c).

Apparently aware that the ordinary meaning of the word "forfeiture" in § 12–301(5) poses problems for its contention that the one-year limitations period is not applicable here, appellee offers a historical argument to support its position. This argument is that the one-year limitations period in § 12–305(5) applies only to private forfeiture actions and not to forfeiture actions asserting a public right.

In advancing this argument, appellee notes first that at common law and in the early history of the United States, two categories of forfeiture actions existed. One category was "popular" or *"qui tam"* actions which were established by statute and provided for the recovery of a penalty or forfeiture by the individual prosecuting the action.[2] Such actions were private in nature and could not be brought by the state. *See United States v. Simms,* 5 U.S. (1 Cranch) 252, 258–59, 2 L.Ed. 98 (1803). The second category was public forfeiture actions which could be initiated by a governmental entity.

Appellee next points out that the original statutory provision providing a statute of limitations for forfeiture actions—adopted in 1901—enumerated only private actions. This provision established a one-year statute of limitations

> for any statutory penalty or forfeiture, or for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment. . . .

D.C.Code § 1265 (1901). Appellee reasons that since all the other actions in the 1901 statute were "plainly private in nature, it must be inferred that the penalties and forfeitures it contemplated were also private in nature."

While this argument may have some force historically, it is unpersuasive because it fails to account for inconsistencies that emerge when other statutory provisions are considered. *See In re T.L.J.,* 413 A.2d 154, 158 (D.C.1980) (one part of a statute may not be construed so as to render another part meaningless). As noted by appellee in its brief, the current D.C.

---

**2.** In a *qui tam* action, part of the penalty collected went to the state; in a popular action, the entire recovery would go to the person prosecuting the action. *See* 70 C.J.S. PENALTIES § 8d (1951); 36 AM.JUR.2D *Forfeitures and Penalties* § 79 (1968).

Code contains a provision establishing a private right to bring a forfeiture action for recovery of gaming losses. *See* D.C. Code § 16–1702 (1981). Significantly, however, this provision also requires that such private forfeiture actions for recovery of gaming losses be brought within three months. *See id.*

Thus, acceptance of appellee's argument would have us construe relevant statutory provisions in a most peculiar way. Under appellee's analysis, the one-year limitations period of § 12–301(5) would apply to a private forfeiture action under § 16–1702 despite the fact that this provision already has a clearly articulated statute of limitations. Conversely, the one-year limitations period would not apply to a public libel action for forfeiture under § 22–1505(c), although no limitations period would then be applicable to such an action. We simply cannot accept that the drafters of the Code contemplated such an anomalous result. Consequently, we reject appellee's argument and find the one-year limitations period applicable to forfeiture actions under § 22–1505(c).

### III

■ Although we find the one-year statute of limitations in § 12–301(5) applicable to libel actions for forfeiture under § 22–1505(c), we affirm the decision below because we further hold that the statute is tolled during the time period between seizure of the property and judgment in the underlying criminal prosecution.

Libel actions for forfeiture under § 22–1505(c) are independent, in many respects, of criminal proceedings brought against the claimant under § 22–1501. A libel of information for forfeiture, for example, may be filed prior to, or in the absence of, a criminal conviction for the underlying offense. *See Various Items of Personal Property v. United States*, 282 U.S. 577, 580–81, 51 S.Ct. 282, 283, 75 L.Ed. 558 (1930). Also, in the District of Columbia, a

forfeiture proceeding and the prosecution for the underlying crime are handled by separate administrative entities. Thus, in the District of Columbia, libel actions for forfeiture are brought in the name of the District of Columbia by the Corporation Counsel, *see* D.C.Code § 22–1505(c) (1981), while prosecutions for criminal violations of the gambling statute are conducted in the name of the United States by the United States Attorney for the District of Columbia. *See id.* § 23–101(c).

This quasi-independence of the libel action and related criminal prosecution creates strong policy reasons for tolling the statute of limitations during the pendency of the criminal proceeding. Where, as here, the District of Columbia may bring a civil forfeiture action against property because it was used in connection with criminal conduct, the civil forfeiture action may adversely affect the criminal proceedings arising from the same seizure. The Supreme Court outlined these potential problems in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 567, 103 S.Ct. 2005, 2013, 76 L.Ed.2d 143 (1983), as follows:

A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding, which ... may often include forfeiture as part of the sentence. A prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated criminal prosecution.... In some circumstances, a civil forfeiture proceeding would prejudice the claimant's ability to raise an inconsistent defense in a contemporaneous criminal proceeding.

(Citations omitted). In addition, scarce judicial resources are conserved by tolling the statute because resolution of the criminal proceeding might very well facilitate the disposition of the libel action. As a

practical matter, a judgment of acquittal in the criminal proceeding, while not dispositive of the libel action, may bear on the District's decision to pursue forfeiture of the seized property.

Our decision to toll the statute is also supported by the fact that in the District of Columbia, forfeiture actions and related criminal proceedings are handled administratively by separate sovereigns. As a result, should the District decide to delay commencement of the forfeiture action until the criminal proceeding has reached judgment, it is unable to ensure that this will occur prior to expiration of the one-year statute of limitations because the United States Attorney has responsibility for the criminal case. Thus, tolling the statute in this situation gives the District the flexibility it needs to deal with a situation over which it has no control. *Cf. Ivers v. United States*, 581 F.2d 1362, 1371 (9th Cir.1978) (administrative consideration of claimant's remission petition does not excuse the government from its obligation to commence prompt judicial proceedings where both actions are controlled by the same agency).[3]

Finally, tolling the one-year limitations period in this case is consistent with the interests served by statutes of limitations generally. Statutes of limitations

> [p]romote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.... Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

*Burnett v. New York Central Railroad*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1964) (citations omitted).

Clearly, these interests are served by tolling the statute in this case. As noted above, because any criminal proceedings are instituted and conducted by the United States and not the District of Columbia, the District has no opportunity to use these proceedings to "sleep on its rights." Because the evidence in the two proceedings is often the same, it is similarly unlikely that memories will fade and witnesses disappear while the criminal proceedings are pending. In addition, tolling the statute in these circumstances serves the interests of justice. The claimant is not forced to prejudice his rights in the criminal proceedings by defending a prior or contemporaneous libel action for forfeiture. The claimant is also denied the opportunity to exploit the civil proceeding to gain unwarranted discovery of the government's case in the criminal action. Thus, tolling the statute of limitations is proper in this case because the underlying purposes of the statute of limitations would be served, and the interests of justice promoted. *Id.* at 426–28, 85 S.Ct. at 1053–54; *see also Kleiboemer v. District of Columbia*, 458 A.2d 731, 735 (D.C.1983), *cert. denied,* ── U.S. ──, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984).[4]

Our holding in this case, tolling the statute of limitations during the time between seizure of the property and judgment in the related criminal proceeding, in no way affects the protection afforded by the due process clause to claimants in libel actions for forfeiture. U.S. CONST. amend. V; *see United States v. Eight Thousand Eight Hundred and Fifty Dollars, supra,* 461

---

**3.** In this case, we hold only that the quasi-independence of the libel action and related criminal proceeding support tolling of the statute of limitations during the time period between seizure of the property and judgment in the underlying criminal prosecution. We expressly do not determine the impact of this quasi-independence on other aspects of the relationship between libel actions and related criminal proceedings.

**4.** Were we to decide that the statute of limitations is not tolled in this case, the District of Columbia could achieve the same practical result by commencing the libel action within the statutory period and then requesting a stay of proceedings until the criminal action was completed. In our view, such a procedure affords the claimant no additional protection, and needlessly consumes scarce judicial resources. For these reasons, we decline to adopt it.

U.S. at 562–65, 103 S.Ct. at 2011–13. Thus, under different facts, it is possible that a delay in commencing a libel action could run afoul of the requirements of due process, despite the fact that the statute of limitations was not violated.

In this case, appellee commenced the libel action for forfeiture six months after the criminal proceeding against appellant reached judgment. Consequently, the one-year statute of limitations applicable in this case was not violated. Accordingly, the decision on appeal is

*Affirmed.*